FILED
01 JAN 25 PM 3: 42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES B. COUPLAND, )
　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　) CIVIL ACTION NO.
v.　　　　　　　　　　　　)
　　　　　　　　　　　　　) CV-00-AR-0473-S
WASHINGTON GROUP　　　　 )
INTERNATIONAL, INC.,　　 )
　　　　　　　　　　　　　)
　　　Defendant.　　　　　)

ENTERED
JAN 25 2001

## MEMORANDUM OPINION

In this civil action, brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 601, *et seq.*, (the "ADEA"), plaintiff James B. Coupland ("Coupland") claims that he was discharged from his employment with defendant Washington Group International, Inc., f/k/a Raytheon Engineers & Constructors, Inc., ("WGI") because of his age. WGI denies that Coupland was discharged because of his age and, instead, says his position was eliminated as a part of a reduction-in-force (RIF). This matter is now before the court on defendant's motion for summary judgment. For the reasons set forth in the opinion below, WGI's motion will be granted and the claims will be dismissed.

### PERTINENT AND UNDISPUTED FACTS

WGI is principally engaged in providing engineering and construction services to clients who manufacture industrial products for the pulp and paper industry. Coupland was an engineer

in the HVAC group, which designs and installs the heating, ventilation and air conditioning systems in buildings owned by WGI's clients. In 1998-99, according to WGI, there had been a consolidation within the pulp and paper industry, thereby reducing WGI's work load. Up until June 1999, the HVAC group was part of the Mechanical/HVAC Department. In order to streamline operations, it was combined with the Piping Department to form the new Piping/Mechanical/HVAC Department under the leadership of Jack Rutledge ("Rutledge").

According to WGI, as a result of the industry downturn, WGI embarked on a RIF, and terminated Coupland's employment on August 13, 1999. WGI also terminated Bob Love's ("Love") employment. At the time of Coupland's termination, the HVAC group was comprised of the following members (and their respective ages): Frank Brown (59), Coupland (61), Jim Ellerbee (57), Steve Henderson (43), Will Lawrence (48), Love (39), Jim Price (59), David Way (26) and Jimmy Williamson (48). Prior to WGI's RIF, the average age of the HVAC group was approximately 48.8 years. After the RIF, the average age was approximately 48.5 years.

According to Rutledge's affidavit, he recommended the RIF to maintain a positive cash flow within the department. Rutledge is responsible for managing the "billability" of the department:

> Basically, an engineer's (or designer's) time

2

> is charged to a specific project and the company is reimbursed by the client for that engineer's time. Otherwise, the engineer's time must be absorbed as overhead.
>
> * * *
>
> In August of 1999, I selected Bob Love and Jim Coupland from the HVAC group for reduction in force . . . At that time, Love and Coupland were the only two employees in the HVAC group who were not currently assigned to a billable project or work proposal. Coupland had finished his assignment . . . approximately two weeks earlier. In the meantime, because we did not have other billable work for him to do, he was assigned to work on standardizing specifications. His time on this assignment was charged to general overhead. Bob Love had just completed his work . . . and we did not have another billable assignment for him. Because I did not have a project to which I could assign Love and Coupland, I selected them for reduction in force.

Rutledge Affidavit, ¶5 and ¶9.

Coupland timely filed his discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on August 24, 1999, which was well within 180 days of the alleged discriminatory act. Coupland claimed that he was discriminated against because of his age in that "[t]he employer retained younger employees with less experience in jobs that I am qualified to perform."

Shortly after his termination, Coupland sought employment through the Alabama Unemployment Office. Not long thereafter, the State contacted Coupland about two job opportunities. Since both

jobs were not in Coupland's area of expertise, the State declined to send him on the interviews. No other opportunities arose for Coupland via the unemployment office.

Approximately six weeks after his termination, due to an increase in billable work, Rutledge wanted to rehire Coupland as either a regular or contract employee. WGI offered Coupland the same remuneration that he received prior to his termination. Coupland decided to decline the offer, saying that he wanted to retire. At around this same time, Coupland also received a job offer to be an engineer for Byrd & Associates ("Byrd"), a paper mill ventilation contractor, in Mobile, Alabama. The job required Coupland to accept a 60% reduction in pay and to move to Mobile, Alabama. For these reasons, and consistent with his decision to retire, Coupland rejected Byrd's offer.

Coupland was issued a "right-to-sue" letter from the EEOC on November 30, 1999 and filed a complaint against WGI on February 28, 2000.

On May 18, 2000, Rutledge contacted Coupland again to see if he would be interested in returning to WGI as a full-time, regular employee. Coupland declined the offer because he had "just gotten home from the hospital from having [a] heart attack," and because he had "taken early retirement and . . . did not want to come back to work." Coupland Depo., at 34-35. A few days later, Coupland

4

received a third offer to return to WGI on a part-time, hourly basis. In a letter to WGI dated May 30, 2000, Coupland declined the job offer because: (1) Coupland believed that if he accepted the offer, the Social Security Administration would significantly reduce his benefits due to salary limitations imposed upon a retiree before his or her sixty-fifth birthday,[1] and (2) on May 12, 2000, Coupland suffered a heart attack, and was in poor health.

### SUMMARY JUDGMENT STANDARD

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at

---

[1] Coupland stated that he was concerned that if he accepted the offer in May, and "got laid off say in August . . . I would go from August to the first of the year without any income because my Social Security check would be cut out." Coupland Depo., at 38.

5

249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

Defendant's motion for summary judgment should be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### DISCUSSION

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Eleventh Circuit has said:

> [W]hen a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.

*Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000), citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

6

120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000) (internal marks and citations omitted). Coupland may establish a *prima facie* case of age discrimination in three ways: (1) by direct evidence of discriminatory intent; (2) by statistical proof of a pattern of discrimination; and (3) by circumstantial evidence via the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Coupland has failed to present any direct evidence of age discrimination. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption . . . Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989).

Coupland could have established a *prima facie* case without direct evidence by presenting statistical evidence that demonstrates a pattern or practice of age discrimination. *See Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir. 1988). Coupland has not submitted any statistical evidence to support his claim, most likely because only two persons were terminated in the RIF of August 13, 1999, one of whom was 39 years of age.

In order to make a *prima facie* case of age discrimination for

7

a reduction in force termination via circumstantial evidence, Coupland must prove that (1) he was a member of the age group protected by the ADEA at the time of his termination; (2) he was qualified at the time of his termination; and (3) there is evidence from which a reasonable fact finder could conclude that the employer intended to discriminate on the basis of age in making the decision; and (4) plaintiff was replaced by or otherwise lost a position to a younger individual. *See Chapman v. AI* Transport, 229 F.3d 1012, 1024 (11th Cir. 2000); Benson *v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329 (11th Cir. 1998); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996). While WGI concedes that Coupland has proven the first two prongs of this test, it points out that Coupland does not present sufficient evidence to allow a reasonable juror to find any discriminatory intent on the basis of age. The court agrees.

Assuming *arguendo* that Coupland could establish a *prima facie* case, this would only suffice to create a rebuttable presumption of discrimination. The burden falls upon WGI's shoulders to articulate one or more nondiscriminatory reasons for not retaining Coupland in his position as an engineer. WGI more than adequately meets this test with the affidavit of Rutledge, who explained his decision to terminate Coupland by saying that "Love and Coupland

were the only two employees in the HVAC group who were not currently assigned to a billable project or work proposal . . . Because I did not have a project to which I could assign Love and Coupland, I selected them for reduction in force." Coupland contends that WGI discriminated against him by assigning David Way ("Way"), who was 26 years of age, to a billable project, rather than himself. Coupland Depo., at 70-72.

According to Rutledge, however, Way was assigned to an existing billable project, rather than Coupland, because the position "was a lower responsibility assignment that would not have been appropriate for someone of Coupland's experience and salary level." Rutledge Aff., at ¶14. Rutledge believed that the employer would not have paid for someone to perform the equipment list coordinator job at Coupland's salary level. Rutledge Aff., at ¶14.

Coupland is not satisfied by WGI's stated reasons for reducing its work force, but this court cannot simply second-guess or disagree with legitimate business judgments. Coupland argues that he was more qualified than Way, and that he "had more experience . . . than any of the rest of" his co-workers. Coupland Depo., at 101. The truth of the matter is that "one's own subjective appraisal of one's accomplishments alone clearly do not establish that an individual is more 'qualified' for a given position than someone else." *Huchsermeyer v. AT&T Communications*, 746 F.Supp. 99, 103 (N.D. Ga. 1990), *aff'd*, 929 F.2d 706 (11th Cir. 1991).

Even if Rutledge exercised bad or questionable judgment in making his RIF decision, a conclusion this court may not make and does not suggest, Rutledge's decision to select Coupland for RIF does not support a claim unless it was made on account of his age.

Because WGI has articulated legitimate, nondiscriminatory reasons for selecting Coupland for RIF, his claim can only survive if he presents evidence sufficient to lead a reasonable jury to infer pretext on WGI's part. Coupland fails in this regard. To support his contention that WGI's purported reasons are merely pretextual, Coupland asserts that "[f]or approximately two years [he] had been told by his supervisor that the HVAC department was becoming too aged and needed to train younger engineers." Pla.'s Response, at 8. Coupland, however, forgets to point out that Love, who was 39 years of age, was also terminated because he was not assigned to a billable project or work proposal. Rutledge Aff., at ¶9. In addition, the average age of the HVAC group remained virtually unchanged after the RIF.

Coupland also attempts to correlate his termination with the fact that "this was the first and only time he had been charged off to general overhead." Pla.'s Response, at 9. Coupland seems to be implying that he was selected for RIF because he was working on non-billable work. The court fails to see how this is evidence of pretext, and how discriminatory intent can be fairly deduced from

10

the fact, assuming it to be a fact, that the WGI employed its abilities to make subjective judgments. Under the law, Rutledge is permitted to make hiring and firing decisions of persons under his authority, and he may legally terminate Coupland's employment. All that Rutledge may not do, for purposes of this dispute, is to fire Coupland on account of his age. In any event, Coupland has failed to provide evidence that this particular nondiscriminatory reason for preferring other employees is pretext. The court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Alexander v. Fulton County*, 207 F.3d 1303, 1340 (11th Cir. 2000)(citing *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329-30 (10th Cir. 1999)). For this reason, Coupland's claim ultimately fail as a matter of law. Accordingly, WGI's motion for summary judgment will be granted by separate and appropriate order.

Done this 25th day of January, 2001

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE